# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| ONESSIMUS M. GOVEREH, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:07-CR-0131-JEC-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:12-CV-0403-JEC-RGV |

## FINAL ORDER, REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of movant Onessimus M. Govereh's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 196], the government's response, [Doc. 203], and Govereh's reply, [Doc. 204]. Also before the Court are Govereh's pro se motion for bail pending the Court's decision on his § 2255 motion, [Doc. 207], and pro se motion for issuance of the Report and Recommendation ("R&R"), [Doc. 228]. Following a June 18, 2012, evidentiary hearing, and having considered the motion, the evidence presented, and the parties' post hearing-briefs, Govereh's motion for bail, [Doc. 207], and motion for issuance of the R&R, [Doc. 228], are **DENIED**, and it is **RECOMMENDED** that Govereh's § 2255 motion, [Doc. 196], be **DENIED**.

# I. PROCEDURAL HISTORY

A federal grand jury returned an indictment charging Govereh with twenty counts of knowingly making and presenting to the United States Department of the Treasury false claims for income tax refunds, in violation of the False Claims Act, 18 U.S.C. § 287. [Doc. 1]. Govereh pleaded not guilty and proceeded to a six-day jury trial beginning on January 7, 2008, represented by Kendal Silas of the Federal Defender Program, Inc. [Docs. 6, 83-88]. The jury found Govereh guilty on fourteen counts, [Doc. 93], and the Honorable Jule E. Carnes, Chief United States District Judge, subsequently imposed a total sentence of one hundred months of imprisonment, [Doc. 163]. Govereh filed a motion for a judgment of acquittal or a new trial, [Docs. 98-99, 125], which was denied, [Doc. 162].

On Govereh's request, [Doc. 182], the Judge Carnes terminated his counsel so that Govereh could represent himself on appeal, [Docs. 183]. Govereh then filed a pro se appellate brief, arguing that: (1) the indictment failed to charge a legitimate offense because electronic portions of IRS Form 1040 do not constitute claims within the meaning of the False Claims Act, which (a) excludes claims made under the Internal Revenue Code, (b) is preempted by the Internal Revenue Code, and (c) does not impose liability on the filing of incomplete and invalid claims; (2) the False Claims

Act is ambiguous regarding whether it applies to claims, records or statements made under the Internal Revenue Code; (3) there was insufficient evidence to support Govereh's convictions; (4) the government's misconduct and improper statements undermined the fairness and integrity of Govereh's trial; (5) the district court abused its discretion by refusing to give jury instructions requested by Govereh; (6) Govereh's due process right to a fair trial was violated by juror misconduct; (7) Govereh's fundamental rights were violated by a constructive amendment of the indictment and a variance in the evidence at trial;[1] (8) Govereh was denied a fair trial when he was "paraded in handcuffs through courthouse hallways and [was] mistreated by the Marshals inside the courtroom in the presence of the jury";[2] (9) the cumulative effect of improperly admitted evidence and several errors denied Govereh a fundamentally fair trial; and (10) the district court erred in calculating the sentencing guidelines,

---

[1] As to this ground, Govereh asked the Eleventh Circuit to refer to his motion for a judgment of acquittal and new trial. [Doc. 203-1 at 43-44]. In that motion, Govereh argued that his fundamental rights were violated by a constructive amendment of the indictment and a variance in the evidence at trial because the government presented evidence "concerning uncharged tax illegalities, including the submission of tax forms with false wage, dependency, educational expense, and business loss information." [Doc. 125 at 56-60].

[2] Govereh also asked the Eleventh Circuit to refer to his motion for a judgment of acquittal and new trial for more details to support this ground. [Doc. 203-1 at 44].

3

including the U.S.S.G. § 3B1.1 enhancement for Govereh's role in the offense, and imposed an unreasonable sentence. [Doc. 203-1 at 19-49].

On April 13, 2011, the Eleventh Circuit affirmed Govereh's conviction and sentence. United States v. Govereh, 423 F. App'x 861, 869 (11th Cir. 2011) (per curiam). In rejecting Govereh's challenge to the sufficiency of the evidence against him, the Eleventh Circuit held:

> As the record shows, the government presented extensive documentary and testimonial evidence showing that: (1) Govereh is listed as the tax preparer on the 14 tax returns which the jury found him guilty of fraudulently submitting to the government; (2) eight witnesses testified that they met Govereh at Icon Tax Service, discussed their tax returns with him, and generally understood that Govereh was going to be filing their returns; and (3) Kenndric Roberts testified that Govereh employed him to refer taxpayers to Icon, and that Govereh was the one person who was authorized to file tax returns at Icon. Moreover, when a defendant testifies, as Govereh did here, the jury is "permitted to reject" that testimony and can consider such evidence as substantive evidence of guilt. United States v. Jiminez, 564 F.3d 1280, 1285 (11th Cir. 2009) (citations omitted). Under these circumstances, a reasonable jury could have found Govereh guilty of submitting fraudulent tax returns to the United States. Moreover, Govereh ignores that the fraudulent returns, regardless of whether they were properly verified, were filed in an attempt to cause the government to pay out money. Therefore, there was sufficient evidence for a reasonable jury to find Govereh guilty of violating § 287 as charged.

Id. at 865.

On February 6, 2012, Govereh filed this pro se § 2255 motion, raising the following grounds for relief: (1) the indictment was fatally defective because (a) the False Claims Act excludes claims made under the Internal Revenue Code, and (b) the IRS Form 1040s were not verified and, thus, could not be considered false, material, or demands "upon the government for payment of money or transfer of public property" within the meaning of the False Claims Act; (2) he received ineffective assistance of trial counsel because (a) he would have accepted the government's plea offer had counsel informed him that the prosecution's evidence included the hard drive from the computer used to transmit the Form 1040s at issue in this case, and (b) counsel's failure to investigate and conduct discovery on the employment status of Kendra Robertson, whom Govereh alleged was an Internal Revenue Service ("IRS") employee who approved the tax fraud, deprived him of an estoppel-by-entrapment defense; (3) the district court constructively amended the indictment, which charged that the taxpayers were not entitled to the Telephone Excise Tax Refund ("TETR") credits, by allowing the government to introduce evidence that the tax returns also included false information about the taxpayers' wages, dependents, educational expenses, and business losses; (4) he was denied a fair trial when the marshals led him into the courtroom in handcuffs and mistreated him inside the courtroom; and (5) he

5

should be resentenced because one of his prior convictions has been vacated, which entitles him to a lower criminal history category, and he should not have received an enhancement for his role in the offense under U.S.S.G. § 3B1.1(b). [Doc. 196 at 5-29]. The government responds that Govereh may not relitigate grounds one, three, and four, which were raised and rejected on direct appeal and that ground five is not cognizable under § 2255. [Doc. 203 at 9-18]. Govereh has filed a reply disputing the government's arguments as to grounds one and three through five. [Doc. 204].

On June 18, 2012, the undersigned appointed counsel to represent Govereh, [Doc. 210], and subsequently conducted an evidentiary hearing to address Govereh's claims in ground two that: (a) he would have accepted the government's plea offer had Silas informed him that the prosecution's evidence included the hard drive from the computer used to transmit the Form 1040s at issue in this case; and (b) Silas was ineffective in his investigation of Robertson, [Doc. 214]. The parties have filed post-hearing briefs, [Docs. 216, 220, 222, 224], and Govereh has filed a pro se letter in further support of these claims, [Doc. 227]. Govereh also has filed a pro se motion for

6

bail pending the Court's decision on his § 2255 motion, [Doc. 207], and a <u>pro</u> <u>se</u>

motion for issuance of the R&R, [Doc. 228].[3]

## II. DISCUSSION

**A.** **Grounds One, Three, Four, and a Portion of Ground Five were Raised and Rejected on Direct Appeal**

"The district court is not required to reconsider claims of error that were raised

and disposed of on direct appeal." <u>United States v. Nyhuis,</u> 211 F.3d 1340, 1343 (11th

Cir. 2000) (citation omitted). This includes claims that movant has "merely re-

characterized" because "[a] rejected claim does not merit rehearing on a different, but

previously available, legal theory." <u>Id.</u> (citation omitted). Additionally, a claim that

the Eleventh Circuit did not expressly reject is nevertheless "rejected by necessary

implication when the holding stated or result reached is inconsistent with the

argument." <u>United States v. Jordan</u>, 429 F.3d 1032, 1035 (11th Cir. 2005); <u>see also</u>

<u>United States v. Carter</u>, No. 2:05cv1016-MEF, 2008 WL 652903, at *5 (M.D. Ala.

---

[3] Govereh mailed the <u>pro</u> <u>se</u> motion for issuance of the R&R to the chambers of the undersigned Magistrate Judge, but did not file it with the Clerk of Court or serve it on counsel for the United States. In the motion, Govereh requests that the Court issue a ruling on ground five prior to ruling on the other grounds in his petition. [Doc. 228 at 1]. However, for the reasons stated hereinafter, the Court finds ground five to be without merit, and Govereh's motion for issuance of the R&R, [Doc. 228], is **DENIED.**

AO 72A
(Rev.8/82)

Mar. 6, 2008) (finding claim that was raised on direct appeal was barred from collateral review where the Eleventh Circuit affirmed movant's convictions but did not expressly address the claim in its opinion).

On direct appeal, Govereh raised the portion of ground one alleging that the indictment was fatally defective because the False Claims Act excludes claims made under the Internal Revenue Code. [See Doc. 196 at 6-7; Doc. 203-1 at 10-18].  It is not clear whether Govereh raised on direct appeal the specific argument that he presents in the remaining portion of ground one:  that the IRS Form 1040s were not verified and, thus, could not be considered false, material, or demands "upon the government for payment of money or transfer of public property" within the meaning of the False Claims Act. [See Doc. 196 at 8-16; Doc. 203-1 at 18-19].  In any event, the Eleventh Circuit rejected Govereh's challenge to the indictment, Govereh, 423 F. App'x at 864, so ground one, including Govereh's new legal theory, is barred from collateral review.  See Nyhuis, 211 F.3d at 1343.

Govereh raised grounds three (regarding constructive amendment of the indictment) and ground four (regarding being led into the courtroom in handcuffs and mistreated inside the courtroom) on direct appeal by incorporation. [See Doc. 196 at 24-28; Doc. 203-1 at 43-44].  However, the Eleventh Circuit has "rejected the practice

8

of incorporating by reference arguments made to the district courts" and held that such arguments are not properly presented for review and are thus waived.  United States v. Kapordelis, 569 F.3d 1291, 1312 (11th Cir. 2009) (citations omitted).  In affirming Govereh's conviction, the Eleventh Circuit rejected–either as waived or meritless–grounds three and four by necessary implication, even though it did not expressly address them.  See Jordan, 429 F.3d at 1035; Carter, 2008 WL 652903, at *5.  Thus, these grounds are also barred from collateral review.  See Nyhuis, 211 F.3d at 1343.

On direct appeal, Govereh also raised the portion of ground five alleging that he should not have received an enhancement for his role in the offense under U.S.S.G. § 3B1.1(b).  [See Doc. 196 at 29; Doc. 203-1 at 47-48].  The Eleventh Circuit rejected this claim, finding "no clear error in the district court's application of a 3-level enhancement for Govereh's role in the offense." Govereh, 423 F. App'x at 868.  Thus, this portion of ground five is also barred from collateral review.  See Nyhuis, 211 F.3d at 1343.

**B.      Ground Two: Effectiveness of Trial Counsel's Assistance**

In ground two, Govereh alleges that he received ineffective assistance of trial counsel because (a) he would have accepted the government's plea offer had Silas

9

informed him that the prosecution's evidence included the hard drive from the computer used to transmit the Form 1040s at issue in this case, and (b) Silas failed to investigate and conduct discovery on the employment status of Robertson, whom Govereh alleged was an IRS employee who approved the tax fraud, depriving him of an estoppel-by-entrapment defense. [Doc. 196 at 16-24].

1. **Statement of Facts**

At the hearing on June 18, 2012, Govereh testified that Silas met with him two or three times at the jail before trial. [Doc. 214 at 6]. The purpose of the first meeting "was to discuss the issue of the detention hearing," and at the second meeting, Silas brought Govereh a box of discovery materials, which they discussed later over the phone after Govereh had reviewed the materials. [Id.]. Silas did not tell Govereh that the government had made a copy of the hard drive of the computer used in Govereh's company. [Id. at 6-7]. Govereh knew by the December 18, 2007, pretrial conference that the government had made a copy of the hard drive, but he did not know how the government intended to use that evidence. [Id. at 9-10]. Silas obtained the computer from Govereh's ex-girlfriend just days before the trial began. [Id. at 10-11]. Govereh never told Silas that there was pornography on the computer because he believed that he had deleted all of his personal files before it was "used in the office setting." [Id.

at 11]. Govereh did not learn that the government had retrieved pornography from the computer's hard drive until the morning of trial. [Id.].

Govereh further testified that, in approximately June of 2007, he told Silas that Robertson was an IRS employee who had prepared tax returns at Govereh's business and had advised Govereh regarding acceptable tax preparation practices. [Id. at 7-8]. Govereh also provided Silas with Robertson's contact information. [Id. at 8]. Silas later told Govereh that he had gone to Robertson's house, but was unable to locate her. [Id. at 13]. According to Govereh, Silas also stated that he had asked the government for information regarding Robertson's employment status and was told that the IRS was "not allowed to disclose information regarding employees." [Id.].

On cross examination, Govereh affirmed that his defense at trial was that he never prepared or filed any of the fraudulent tax returns and that he testified several times at trial that other people prepared and filed those returns. [Id. at 14, 16]. Govereh further testified that, on Robertson's advice, his tax preparation business sold names and Social Security numbers to customers who wanted to claim more dependents on their returns. [Id. at 16-17].

Govereh testified that Silas never discussed with him the possibility of pleading guilty. [Id. at 18]. According to Govereh, he did not learn that the government had

11

made him a plea offer until early November of 2007. [Id.]. At that time, Silas told Govereh that the government had offered five years, "but the decision to go to trial had already been made." [Id. at 19]. Shortly thereafter, Govereh sent a letter to the government regarding the possibility of "cooperating against a set of individuals . . . that [Govereh] knew to be engaging in tax fraud." [Id. at 20].

The prosecutor in Govereh's case, former Assistant United States Attorney ("AUSA") Paul Monnin, testified that he had made plea offers to Govereh via telephone conferences with Silas followed by written correspondence memorializing the offers. [Id. at 22-23]. Specifically, in June of 2007, AUSA Monnin submitted a proposed plea agreement to Silas that estimated a thirty to thirty-seven month guideline range, but did not bind the government to any recommendation within that range. [Id. at 25-26, Gov't Ex. 1]. In August of 2007, AUSA Monnin submitted another proposed plea agreement to Silas in which the government agreed to recommend a sentence at the low end of the guideline range. [Id. at 26, Gov't Ex. 2]. Both plea offers were rejected. [Id. at 30]. On November 14, 2007, AUSA Monnin forwarded to Silas a letter he had received from Govereh in which Govereh offered to cooperate and testify against other individuals associated with his tax preparation business, but only if the

12

government agreed not to oppose his motion for bond reconsideration.  [Id. at 28-30, Gov't Ex. 4].  AUSA Monnin declined Govereh's offer.  [Id.].

The government provided discovery to Silas, including computer hard drives. [Id. at 24].  This evidence included documents and photographs that were personal to Govereh, which the government intended to introduce in order to show that "Govereh was in fact the individual who had input information into the computer and then filed the electronic returns with the IRS."  [Id.].  The pornographic material referenced during trial consisted of directories of computer searches, not images.  [Id. at 34].  On November 6, 2007, AUSA Monnin sent Silas a letter disclosing the government's intent to offer the testimony of IRS special agent and computer investigative specialist Michael Anderson, who would testify regarding the personal data found on the computer used in Govereh's tax preparation business in order to "tie the computer" to Govereh.  [Id. at 27-28, Gov't Ex. 3].

Next, IRS special agent Maisha Horton testified that she first heard Robertson's name during the execution of the search warrant on the premises of Govereh's tax preparation business.  [Id. at 39].  During the search, Agent Horton found an IRS employee-only handbook that purportedly belonged to Robertson.  [Id. at 39-40]. Agent Horton attempted to identify Robertson, but was never able to find her or

13

determine whether she was an IRS employee at the time of the investigation. [Id.].

During trial, Silas asked Agent Horton about Robertson, and she told him that she

could not find anything on Robertson. [Id. at 41].

Agent Horton explained that she had searched the IRS database of then active

IRS employees for Robertson. [Id. at 42]. The database did not include seasonal

employees who were not actively working at the time of Agent Horton's search. [Id.

at 43]. After the trial concluded, Agent Horton learned that Robertson had been an IRS

seasonal employee sometime in 2007. [Id. at 43-44].

Silas testified that he discussed the government's proposed June plea agreement

with Govereh and that Govereh did not want to accept the offer. [Id. at 48-49]. Silas'

recollection was that Govereh "wanted an agreement to a loss amount figure that was

substantially different than what was contained here in the two offers from the

government." [Id. at 49]. Silas believes that he discussed the government's proposed

August plea agreement with Govereh by phone. [Id. at 49-50].

Silas further testified that Govereh asked him to locate Robertson. [Id. at 50].

Silas attempted to find Robertson, but was unsuccessful. [Id. at 50-51]. Silas recalled

that the government had indicated that it also could not find Robertson. [Id. at 51-52].

Silas stated that he first saw the list of pornographic movies found on the computer used to file the fraudulent tax returns in November of 2007. [Id. at 52]. Govereh's main defense at trial was that he was not the person who filed those returns. [Id. at 52-53]. On cross-examination, Silas admitted that, while he was aware in November of 2007 of the government's intent to use personal data to connect Govereh to the computer used in his tax preparation business, he may not have known that the data included pornography until the weekend before trial began. [Id. at 54-56]. Silas also testified that "he would have had some discussion" with Govereh prior to trial about the government's belief that it could connect him to the computer. [Id. at 61].

### 2. Government's Plea Offer

Defense counsel renders ineffective assistance by allowing a favorable plea "offer to expire without advising the defendant or allowing him to consider it." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). Defense counsel is also ineffective by providing defendant incompetent advise to reject a favorable plea offer. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). In order to establish prejudice based on an expired or rejected plea offer,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court ( i.e., that the defendant would have accepted the plea and the

15

prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 1385.

The undersigned does not find credible Govereh's claim, which he did not raise in his § 2255 motion, that Silas never informed him about the government's plea offers. See [Doc. 196 at 16-24]. Instead, the undersigned credits Silas' testimony that he discussed the offers with Govereh, who rejected them. [Doc. 214 at 48-50]. In fact, at the December 18, 2007, pretrial conference, Silas told the Court that he had discussed the government's prior plea offers with Govereh, and Govereh confirmed his understanding that he was "made aware of those plea offers and . . . turned them down." [Doc. 180 at 59].

The undersigned likewise does not find credible Govereh's contention that he would have accepted the government's offers had he known that the prosecution's evidence included the hard drive from the computer used to transmit the fraudulent tax returns. Govereh's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." Diaz v. United States, 930 F.2d 832, 835 (11th

16

Cir. 1991). Rather, the record evidence indicates that Govereh did not express an interest in pleading guilty until just before trial, at which time the government was no longer interested in plea negotiations. [Doc. 180 at 57; Doc. 214 at 28-30, Gov't Ex. 4].

Additionally, the undersigned finds that Govereh has failed to show prejudice, i.e., that he would have accepted the government's offer and that the Court would have accepted his plea. Lafler v. Cooper, 132 S. Ct. at 1385. Accepting the plea offers would have required Govereh to admit his guilt. During trial, Govereh testified several times that he did not prepare and file the fraudulent returns and that he believed it was permissible to sell fraudulent dependents. [Doc. 114 at 227-29, 236-39; Doc. 115 at 7, 19, 22-24, 37-38, 77, 87, 98-99; see also Doc. 214 at 14, 16]. Govereh still maintains that he "testified truthfully at trial." [Doc. 227 at 2]. The Eleventh Circuit has upheld a district court's finding that a defendant could not show prejudice based on counsel's alleged ineffectiveness in conveying the prosecution's plea offer because the defendant's "belief in his innocence motivated his rejection of the offer." Blanco v. Sec'y, Fla. Dept. of Corr., No. 11-11993, 2012 WL 3081313, at *21 (11th Cir. July 31, 2012). Govereh's contention that he "had no choice but to maintain his innocence . . . because he was unaware of the extent of the Government's evidence against him"

17

is simply not credible. [Doc. 224 at 4]. In summarizing the "extensive" evidence of Govereh's guilt, the Eleventh Circuit did not mention the computer evidence, but noted that Govereh was listed as the tax preparer on the fraudulent returns, that eight witnesses had testified that they met with Govereh to discuss their tax returns and understood that he would file their returns, and that Kenndric Roberts testified that Govereh "was the one person who was authorized to file tax returns." Govereh, 423 F. App'x at 865. Govereh does not contend that he was unaware of this evidence at the time the government made its offers, yet in the face of this "extensive" evidence, he chose to go to trial. Because Govereh has failed to show that counsel was ineffective in conveying the government's plea offers to him or that he was prejudiced, he is not entitled to relief on this ground.

### 3. **Ms. Robertson's Employment Status**

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Id. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at

18

690.  A court analyzing <u>Strickland</u>'s first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Id.</u> at 689; <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992) (citation omitted) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . .").  Counsel is not incompetent so long as the particular approach taken could be considered sound strategy.  <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); <u>see</u> <u>also</u> <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden.")

In order to meet the second prong of <u>Strickland</u>, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  <u>Strickland</u>, 466 U.S. at 691.  In order to demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> at 694.

19

Silas testified that he attempted to find Robertson, but was unsuccessful. [Doc. 214 at 50-51]. Agent Horton was also unable to locate Robertson before trial and told Silas that she could not find anything on Robertson. [Id. at 39-41, 52]. The fact that Silas' attempts to locate Robertson were unsuccessful does not demonstrate constitutionally deficient performance, particularly since the government was also unable to locate Robertson prior to trial. Regarding prejudice, Govereh states that Robertson "may have testified truthfully and supported [Govereh's] affirmative defense" of entrapment-by-estoppel. [Doc. 216 at 11-12]. Govereh further asserts that Robertson could not have denied being an IRS employee, which would have supported Govereh's testimony and enhanced his credibility, and thus, the Court "would have been more likely to give [his] jury instructions regarding his reasonable reliance on the advice of a government official." [Id. at 12].

Govereh's failure to adduce Robertson's "testimony at the . . . evidentiary hearing has reduced the claim of prejudice to mere speculation," which is insufficient for federal habeas relief. Fuqua v. Sec'y, Dept. of Corr., 409 F. App'x 243, 246 (11th Cir. 2010) (unpublished). Even if Robertson testified as Govereh predicts, he has not shown that there is a reasonable probability that her testimony would have changed the outcome of his case. In order to successfully assert an entrapment-by-estoppel defense

20

based on Robertson's purported testimony, Govereh would have to show, among other things, that his reliance on her advice was "objectively reasonable-given . . . the substance of [her] misrepresentation." United States v. Funches, 135 F.3d 1405, 1407 (11th Cir. 1998). As the government correctly notes, "selling dependents to inflate customers' tax refunds is so obviously fraudulent," and "it is not objectively reasonable to believe that one can commit an obviously criminal act with impunity because someone in government employment says you can." [Doc. 220 at 38]. Therefore, Govereh is also not entitled to relief on this ground.

## C.  Portion of Ground Five Concerning Vacation of Prior Conviction

In ground five, Govereh asserts that he should be resentenced because one of his prior convictions, namely a 2003 Michigan conviction for cashing fraudulent checks, has been vacated, which entitles him to a lower criminal history category. [Doc. 196 at 28-34]. The government responds that this ground is not cognizable under § 2255. [Doc. 203 at 15-18].

A federal prisoner may file a motion to vacate his sentence "upon the ground that . . . the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). "[A] defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated." Johnson v. United States, 544 U.S.

21

295, 303 (2005). Accordingly, a federal prisoner may proceed under § 2255 to challenge an enhanced federal sentence after successfully vacating a prior state conviction. Id. at 304. The Eleventh Circuit has not specifically addressed whether a federal prisoner may seek § 2255 relief where, as here, he received criminal history points under the Sentencing Guidelines for a now vacated prior state conviction, but his sentence was not statutorily enhanced as a result of that conviction. However, the First and Fourth Circuits have held that such a claim is cognizable on a motion to vacate. See Mateo v. United States, 398 F.3d 126, 136 (1st Cir. 2005); United States v. Mobley, 96 F. App'x 127, 129 (4th Cir. 2004) (per curiam). Assuming that such a claim is cognizable on collateral review in this circuit, Govereh's claim fails.

Govereh's current sentence already falls within the Guidelines range that would apply if the District Court were to resentence him using a recalculated criminal history that did not include his vacated state conviction. According to the presentence investigation report ("PSR"), Govereh had eleven criminal history points, which placed him in criminal history category V. [PSR ¶ 44; see also Doc. 170 at 2, 44]. Govereh's criminal history points included two points for the now vacated Michigan conviction.[4]

_____

[4] Both Govereh and the government state that Govereh also received another two points for being on probation for his now vacated Michigan conviction when he committed the offense in this case. [Doc. 196 at 28; Doc. 203 at 16]. However, it

[PSR ¶ 38]. At his December 14, 2009, sentencing hearing, Judge Carnes calculated Govereh's offense level as twenty-five. [Doc. 170 at 44]. Subtracting the 2 points for his now vacated Michigan conviction, Govereh's criminal history points would total 9, which would place him in criminal history category IV, and combined with his offense level of 25, his new Guidelines range would be 84 to 105 months of imprisonment. See U.S.S.G. Ch. 5, Pt. A. Because Govereh's current 100-month sentence is within the applicable Guidelines range and is thus not "in excess of the maximum authorized by law," he is not entitled to § 2255 relief on ground five. Orr v. United States, Nos. CR 403-096, CV 404-205, 2008 WL 2435941, at *4 (S.D. Ga. June 16, 2008) (citing 28 U.S.C. § 2255(a)).

## III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District

appears that Govereh received those additional two points for being on probation for another conviction that has not been vacated. [See PSR ¶¶ 39, 42]. In any event, even if those additional two points were deducted from his criminal history, Govereh would still have seven criminal history points, which results in the same criminal history category of IV that applies to nine criminal history points. See U.S.S.G. Ch. 5, Pt. A.

AO 72A
(Rev.8/82)

Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Govereh's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.[5]

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that this 28 U.S.C. § 2255 motion to vacate sentence, [Doc. 196], and a COA be **DENIED**.

---

[5] Govereh also moves the Court to release him on bail pending the decision on his motion to vacate. [Doc. 207]. However, since Govereh is not entitled to relief on any of his claims, his motion for bail is due to be denied.

AO 72A
(Rev.8/82)

Govereh's <u>pro</u> <u>se</u> motion for bail pending this Court's decision on his § 2255 motion, [Doc. 207], and his <u>pro</u> <u>se</u> motion for issuance of the R&R, [Doc. 228], are **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO ORDERED and RECOMMENDED**, this 3rd day of October, 2012.

*Russell G. Vineyard*

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)