IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ONESSIMUS M. GOVEREH, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|     v. | : | CRIMINAL NO. |
| | : | 1:07-cr-0131-JEC-RGV-1 |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | CIVIL ACTION NO. |
| | : | 1:12-cv-0403-JEC-RGV |

## ORDER AND OPINION

This matter is before the Court for consideration of the Final Report and Recommendation ("R&R") issued by United States Magistrate Judge Russell G. Vineyard [229] recommending that Onessimus M. Govereh's 28 U.S.C. § 2255 Motion To Vacate Sentence [196] be denied. Govereh has filed Objections [234-35] and a Motion For An Order Partially Granting Relief [237]. The Court reviews de novo the portions of the R&R to which Govereh has objected and reviews for plain error the remaining portions. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3); *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983)(per curiam).

## I.   PROCEDURAL HISTORY

The Court briefly summarizes the procedural history here.   A federal grand jury returned an indictment charging defendant[1] Govereh

---

[1]  Albeit Mr. Govereh is the movant in this § 2255 action, he was the criminal defendant in the underlying conviction that he is challenging.  Accordingly, he will be referred to as the defendant. The respondent will be referred to as the Government.

with twenty counts of knowingly making and presenting to the United States Department of the Treasury false claims for income tax refunds, in violation of the False Claims Act, 18 U.S.C. § 287. ([1].) Defendant pled not guilty and, following a six-day trial, the jury found him guilty on fourteen counts. ([83-88], [93].) Defendant filed a motion for a judgment of acquittal or, alternatively, a new trial, which the Court denied. ([98-99], [125], [162].) The Court imposed a sentence of one-hundred months imprisonment. ([163].)

At the defendant's request, the Court terminated his counsel to allow the defendant to represent himself on appeal, which he did, filing a *pro se* appellate brief. ([182-83], [203-1].) On April 13, 2011, the Eleventh Circuit affirmed Govereh's conviction and sentence. *United States v. Govereh*, 423 Fed. App'x 861, 869 (11th Cir. 2011)(per curiam).

The defendant has now filed a *pro se* § 2255 motion, raising the following grounds for relief: (1) the indictment was fatally defective because (a) the False Claims Act excludes claims made under the Internal Revenue Code, and (b) the IRS Form 1040s were not verified and, thus, could not be considered false, material, or to be demands "upon the government for payment of money or transfer of public property" within the meaning of the False Claims Act; (2) the defendant received ineffective assistance of trial counsel because

2

(a) defendant would have accepted the Government's plea offer had counsel informed him that the prosecution's evidence included the hard drive from the computer used to transmit the Form 1040s at issue, and (b) because he was deprived of a potential "estoppel-by-entrapment" defense as a result of counsel's failure to investigate fully enough to establish the employment status of Kendra Robertson, who worked with defendant at his tax preparation business and whom he alleged to be an Internal Revenue Service ("IRS") employee who had told him that the tax fraud in which he was engaged was legal; (3) the district court constructively amended the indictment, which charged that the taxpayers were not entitled to the Telephone Excise Tax Refund ("TETR") credits, by allowing the Government to introduce evidence that the tax returns also included false information about the taxpayers' wages, dependents, educational expenses, and business losses; (4) he was denied a fair trial when the marshals led him into the courtroom in handcuffs; and (5) he should be resentenced because one of his prior convictions was vacated after his sentencing and because he should not have received an enhancement for his role in the offense under U.S.S.G. § 3B1.1(b).  ([196] at 5-29.)

The Government filed a Response, arguing that defendant could not relitigate Grounds One, Three, and Four, because these contentions had been raised and rejected on direct appeal; the Government argued that Ground Five is not cognizable under § 2255.

3

([203] at 9-18.) The Government conceded that Ground Two--ineffective assistance of counsel--could proceed.

As the Government had agreed that defendant was entitled to an evidentiary hearing on Ground Two, defendant requested that counsel be appointed, and the magistrate judge did so.[2] ([205], [208].)

The magistrate judge conducted an evidentiary hearing, after which he issued an R&R recommending that the § 2255 motion and a certificate of appealability ("COA") be denied. ([214], [229].) Specifically, the magistrate judge concluded that Grounds One, Three, Four, and a part of Ground Five[3], could not be the basis for a collateral attack, as the Eleventh Circuit had rejected these grounds, either expressly or by necessary implication, on direct appeal. ([229] at 7-11.)

As to Ground Two (ineffective assistance of counsel), having weighed the evidence presented during the evidentiary hearing, assessed the credibility of the witnesses, and considered the parties' post-hearing briefs, the magistrate judge concluded that the

---

[2] At this same time, the defendant also filed a Motion For Bail pending resolution of the § 2255 motion. ([207].) As noted below, defendant has, throughout these proceedings, repeatedly tried to gain immediate release from jail on a bond.

[3] The part of Ground Five that had already been raised on appeal and rejected by the Eleventh Circuit was defendant's challenge of the role enhancement given to him under the Sentencing Guidelines.

4

defendant had shown neither deficient performance by counsel nor prejudice. (*Id.* at 9-21.)

Finally, as to the remaining portion[4] of Ground Five, this claim alleged defendant's right to be resentenced as a result of defendant's having obtained an order vacating his 2003 Michigan conviction for cashing fraudulent checks. The magistrate judge assumed, without deciding, that this claim was cognizable under § 2255, but found that defendant was not entitled to relief based on the vacation of his 2003 conviction, as the sentence imposed was still within the recalculated guidelines range. (*Id.* at 21-23.) Defendant objects to each of the magistrate judge's findings and conclusions. ([234-35].) Additionally, he has now asked the Court to grant relief as to Ground Five, schedule a date for resentencing, and hold the remaining grounds in abeyance. ([237].)

## II.  DISCUSSION

### A.  Claims That Magistrate Judge Found To Have Been Raised On Direct Appeal And Therefor Barred On A § 2255 Motion

#### 1.  Overlapping Claims in Appeal and in § 2255

As noted, the magistrate judge concluded that Grounds One, Three, Four, and the portion of Ground Five concerning the § 3B1.1(b) role enhancement were barred in this § 2255 motion, as the latter were raised by defendant and decided by the Eleventh Circuit in the

---

[4]  *See supra* at 4 n.3.

defendant's direct appeal of his conviction.   There is no question that these issues were raised in the direct appeal.

Specifically, in Ground One of his § 2255 motion, the defendant recycles the arguments asserted in support of his first three appellate issues.[5]  (§ 2255 Mot. [196] at 5-16; Appeal Br. [203-1] at 10-29.)  The gist of these arguments is that the statute under which the defendant was convicted did not prohibit the conduct that was alleged.

In Ground Three of his § 2255 motion, he argues that the indictment was constructively amended at trial: an issue that he also raised in his appeal brief.  (§ 2255 Mot. [196] at 24-25;  Appeal Br. [203-1] at 43.)  In Ground Four of the § 2255, he complains that his right to a fair trial was violated as a result of the possibility that some potential jurors may have seen him being led into the courtroom in handcuffs, during a recess in voir dire.  (§ 2255 Mot. [196] at 25-28.)  Again, he made the same argument in his appellate brief.  (*See* Appeal Br. [203-1] at 44.)

---

[5]   Defendant's first appellate issue asserted that the False Claims Act, whose violation the defendant was charged with and convicted, did not cover false statements on a tax return and, even if it did, the defendant would have had to submit both an electronic IRS Form 1040 and a signed and completed Form 8453 to have actually been deemed to have filed a valid claim for a refund.   Defendant notes that there was no evidence that he had ever submitted a Form 8453.  (*Id.* at 10-19.)   His discussion of his second and third appellate issues amplified the arguments made in support of his first issue.  (*Id.* at 20-29.)

In Ground Five, he alleges that he should be resentenced (a) because after his sentencing, he got one of his prior state criminal convictions vacated and his criminal history score should be recalculated and (b) because the Court erred in enhancing his offense level by three levels based on his aggravating role in the offense. (*Id.* at 28-29.)  The magistrate judge found that the second part of this claim (the role enhancement) was also litigated before the Eleventh Circuit.  The magistrate judge was right.  (*See id.* at 47-48.)

       2.   <u>Legal Standard Regarding Consideration of § 2255 Claims Raised on Direct Appeal</u>

As the magistrate judge correctly noted, a district court "is not required to reconsider claims of error that were raised and disposed of on direct appeal."  *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)(citation omitted).  With regard to the role enhancement issue (§ 2255 Ground Five(b)), the Eleventh Circuit explicitly addressed and rejected defendant's argument that this enhancement had been improperly given.  (11th Cir. Op. [190] at 13-15.)  Likewise, it addressed, and rejected, defendant's argument that his conduct did not violate the False Claims Act (§ 2255 Ground One). (*Id.* at 2-5.)

As to the latter issue, defendant argues that he has made a slightly different point in his § 2255 challenge on this ground than

7

he did in his direct appeal challenge.  The Court has had trouble
discerning any significant difference in the two challenges.  Even
were there a different focus in the two arguments, this would not
help the defendant as, at best, he has "merely re-characterized his
prior ... claim ... [and] [a] rejected claim does not merit rehearing
on a different, but previously available legal theory."[6] *Nyhuis*, 211
F.3d at 1343.

Finally, as to § 2255 Grounds Three and Four (claims of
constructive amendment of indictment and of unfair trial as a result
of possible sighting of defendant in handcuffs by some members of
jury venire), these grounds were also raised on appeal.  Defendant
argues, however, that he is not precluded from advancing these claims
again, as the Eleventh Circuit did not specifically address[7] their

---

[6]  In addition, even assuming that defendant's current challenge
to the indictment could be construed as articulating a different
issue than the one raised on appeal, the defendant's failure to have
raised this "new" issue on appeal would procedurally bar him from
asserting it in a § 2255 petition.  *See Galvez v. United States,* No.
11-12528, 2013 WL 1395745 (11th Cir. Apr. 5, 2013)("Procedural
default is a threshold issue in a § 2255 case.  *See McKay v. United
States*, 657 F.3d 1190, 1195 (11th Cir. 2011).").  Thus, "[w]hen a
petitioner fails to raise an available issue on direct appeal, he is
procedurally barred from presenting such a claim in a § 2255
proceeding.")  *Galvez*, 2013 WL 1395745, at *1.

[7]  As to the "constructive amendment" claim, defendant's argument
is that the admission of extrinsic evidence and of evidence of
uncharged offenses that arose out of the same series of transactions
served to constructively amend the indictment.  The Eleventh Circuit,
however, rejected the defendant's argument on his direct appeal that
admission of such evidence constituted reversible error, albeit the

merits in the latter's opinion affirming the conviction.  Defendant's contention is likewise unconvincing on this point, as "the law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case." *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005).  As the Eleventh Circuit rejected the defendant's appeal and affirmed his conviction, it necessarily rejected his argument that the above two grounds warranted reversal of the conviction.  That is, "[a]n argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument."[8]  *Id.*

In short, the Court agrees with the magistrate judge's well-reasoned conclusion that the defendant cannot litigate the above claims in this § 2255 motion.

**B.**   **Ground Two: Ineffective Assistance Of Counsel**

Defendant has contended that his appointed counsel was ineffective in that: (1) counsel's failure to provide the defendant with certain information caused the defendant not to accept the Government's plea offer and (2) counsel failed to locate the

---

opinion did not label the issue as a "constructive amendment of the indictment claim." (11th Cir. Op. [190] at 7.)

[8]   The Eleventh Circuit noted that it had not addressed the particular argument at issue "in so many words, or in any words for the matter, but we did reject it 'by necessary implication.'" *Jordan*, 429 F.3d at 1035.

9

individual whom defendant claimed was responsible for some of the criminal offenses and whom he wished to call as a witness.

1.   The Rejected Plea Agreement

A defense attorney renders ineffective assistance if he allows a favorable plea "offer to expire without advising the defendant or allowing him to consider it." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). In addition, a defense counsel who incompetently advises a defendant to reject a favorable plea offer is also guilty of being ineffective. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). Of course, the ineffectiveness of counsel is not enough, by itself, to justify vacating a conviction. Instead, the defendant must also show that he suffered prejudice based on an expired or rejected plea offer. To demonstrate the requisite level of prejudice, a defendant must show, to a reasonable probability that, had he received notice or good advice as to the plea offer: (1) he would have accepted the plea offer; (2) the court would also have accepted it; and (3) the resulting sentence would have been less severe than the sentence that was in fact imposed. *Id.* at 1385.

As to the first claim, defendant contends that the magistrate judge made a faulty credibility finding when the latter rejected defendant's claim that he would have pled guilty but for counsel's ineffectiveness. ([234] at 1-4; [235] at 9-12.) When a district court refers a matter to a magistrate judge to conduct an evidentiary

10

hearing, the district court may adopt the magistrate judge's credibility findings, but it may not reject those findings without holding a new hearing to observe the witnesses' demeanor. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245 (11th Cir. 2007).

In this case, having had much contact with the defendant through two pretrial conferences, a week-long trial, a sentencing hearing, and a review of his numerous *pro se* pleadings, as well has having reviewed the transcript of the § 2255 evidentiary hearing, the Court agrees completely with the magistrate judge's credibility determinations. More specifically, the Court agrees with the magistrate judge's factual findings that defense counsel discussed the Government's plea offers with his client and that it was the defendant who chose to reject the offers.

As to the substance of the plea offer that the defendant now wants to accept--several years after a week-long trial, after the imposition of a sentence that he finds to be too long, and after failing to prevail on his direct appeal--the prosecutor actually made two offers. On June 29, 2007, the prosecutor sent defense counsel a letter in which he offered a plea agreement that included a recommendation by the Government of a loss figure of between $400,000 and $1,000,000 (Offense Level 20), a 2-level enhancement for being a tax preparer, and a 3-level reduction for acceptance of responsibility. (*See* June 18, 2012 Evid. Hr'g Ex. List [213] at Ex.

11

1.)   According to the prosecutor's calculations, and assuming a Criminal History of I, the resulting guidelines calculation would have been a 19 Offense Level/I Criminal History, yielding a 30-37 month range.   The prosecutor noted that this was a "generous" offer, given the fact that the intended tax loss figure of $745,000 did not include other non-TETR-related deductions that were illegitimate. Because of that fact, as well as the defendant's prior arrest history, and his absconding to avoid deportation, the prosecutor refused to recommend a low-end of the range sentence.   (*Id.*) Further, the prosecutor said he would consider a § 5K1.1 motion, should the defendant earn same.   Finally, the letter indicated that the offer, which would expire on July 6, was contingent on the defendant withdrawing any pre-trial evidentiary motions.   (*Id.*)

Neither defendant nor his counsel ever accepted this offer. (Evid. Hr'g Tr. [214] at 48-49.)   After the case had been certified as ready for trial, the prosecutor sent a second letter, dated August 14, 2007, offering a plea agreement.   (Evid. Hr'g Ex. List [213] at Ex. 2.)   Having now apparently recognized that the defendant's criminal history category would be higher than the first letter had envisioned, the prosecutor stated that he would recommend a low-end of the range sentence.[9]   Further, like the first offer, the

_____

[9]   Had the defendant accepted this offer and had the Court calculated the Guidelines consistent with that recommendation, the

12

defendant's sentence would be capped at 5-years, as he would be allowed to plead to a single count of the indictment. This offer expired on August 20. (*Id.*) Neither defendant nor his counsel accepted this offer.

As the magistrate judge observed, the defendant's explanation for not accepting the above plea offers has evolved during this § 2255 litigation. In his initial § 2255 motion, defendant suggested that had his counsel informed him that the hard drive of defendant's computer, which had been seized pursuant to a search warrant, contained personal material (photos, emails, and pornography) that connected the defendant to the computer, then defendant would have known how strong the Government's case was and he would have pled guilty. (§ 2255 Mot. [196] at 19-21.) Of course,

---

final offense level would have been 19, with a criminal history category of V, which yielded an advisory range of 57-71 months.

The defendant's final offense level after a trial was much higher (Offense Level 25), but this was primarily because the defendant, having accepted no responsibility, did not receive the 3-level reduction, and having lied under oath, received a 2-level enhancement for obstruction of justice. Without this five-level swing, the defendant's final offense level, as calculated by the Court, would have been a Level 20, with an advisory range of 63-78 months (that is, 6 months more than the anticipated range envisioned by the plea offer).

But the defendant did lie under oath and did not accept responsibility for his offense. Accordingly, his final Offense Level of 25/Criminal History Category V yielded a sentencing range of 100-125 months.

as the defendant had seen the agents working on his computer when they arrested him,[10] as he knew that his attorney had obtained a copy of the hard drive of that computer,[11] and as he knew what he had downloaded onto the computer, his claim that knowledge of those contents would have affected his decision whether to plead guilty makes no sense at all.

Perhaps for this reason, the defendant shifted gears at his evidentiary hearing when explaining the reasons for declining the plea offer. No longer was it defendant's sole[12] position that it was his attorney's incomplete advice that had led him to reject the plea offer. Instead, it was his alternative position that his counsel had actually never even told him about the plea offers. Specifically, defendant testified that, prior to the November 7, 2007 pretrial conference (which was two months before trial), his attorney had never discussed pleading guilty with him, had never shown him a

---

[10]     In response to the question whether he knew that the Government had made a copy of his hard drive, the defendant answered, "Not at--I do know that when I was arrested on February 15th, 2007, there were technicians in the office messing around with the computers." (Evid. Hr'g Tr. [214] at 7.)

[11]     (*Id.*)

[12]     Defendant has not abandoned this argument. His position appears to be that even if his counsel had told him about the offers, which he denied, he would not have accepted them because he was unaware of the personal information found by the Government on his computer.

proposed plea agreement from the Government, and had never stated that the Government had made a plea offer. (Evid. H'rg Tr. [214] at 18.)

Defendant testified that he nevertheless learned about a pending plea offer after this November conference, when the prosecutor told him that he wanted to make sure that the defendant understood that a plea offer was on the table and that it would require cooperation. (*Id.*) Defendant says that he discussed this with his attorney who confirmed that the Government had offered a plea for five years, "but the decision to go to trial had already been made." (*Id.* at 19.) In striking contrast to the assertiveness he has otherwise shown throughout this litigation,[13] defendant apparently made no objection to his attorney about what he now seems to suggest was the latter's unilateral decision to reject a plea offer. (*Id.*) Of course, it would have been absurd for the defendant to believe that he had no power to accept a plea offer that a prosecutor had just told him was presently on the table.

While the defendant never communicated to the prosecutor that he was interested in accepting any of the latter's offers, whether expired or pending, he did send the prosecutor a letter shortly after

---

[13]   The defendant filed numerous *pro se* motions before trial, when he was represented by counsel and several motions after the trial. Further, he represented himself on the direct appeal.

this November pretrial conference.  (*Id.* at 28.)  Even though, according to his testimony, the defendant was aware that the Government had proposed a plea agreement that would involve cooperation, the defendant, oddly enough, showed no interest in entering into a plea agreement in this November 12, 2007 letter. That is, his letter made no mention of sentencing recommendations, guidelines calculations, or even the amount of time he might serve, much less any reference to a willingness to plead guilty.  Instead, the only thing that the defendant expressed any concern about was obtaining a bond.  Specifically, in addition to stating that he would cooperate as to some individuals, but not as to others, defendant stated that his condition for cooperation was that the Government support his request to be released on bond:  "All I ask is that the Government not oppose my motion for bond reconsideration so that I can be free pending resolution of my case." (Evid. Hr'g Tr. [214] at 29-30 and Evid. Hr'g Ex. List [213] at Ex. 4.)**[14]**

Thus, even though defendant admits that he was aware of a plea

---

[14] The post-script to this incident is the Government's November 14, 2007 letter to defense counsel, acknowledging the November 12 letter from defendant and the Government's rejection of the defendant's offer to cooperate in return from the Government agreeing not to oppose his release on bond.  The Government indicated that it would oppose any release of the defendant from custody, as, "aside from his negative immigration status, [the defendant now presumably understands the strength [of the] government's case, which gives him every incentive to flee." (Evid. Hr'g Ex. List [213] at Ex. 4.)

offer in November, his letter indicates that he was still unwilling to accept that offer.  Indeed, his letter to the prosecutor does not indicate any willingness to plead guilty at all, regardless of the Government's recommendation.  Instead, all that defendant wanted was the Government's agreement not to oppose his request for a bond, in return for which the defendant would offer cooperation as to some individuals who had or were about to defraud the Government, but not as to others.[15]   Finally, defendant was present at the pretrial conference on December 18, 2007, and confirmed that his attorney had made him aware of all plea offers.  (Dec. 18, 2007 Pretrial Conf. [180] at 56-60.)

Thus, by his own testimony and the other cited evidence, the defendant was aware of the Government's plea offers at the time they were made.  By his own letter to the prosecutor, he indicated no desire to enter a plea of guilty.  Understandably, the defendant would like now to have been convicted of a single count that capped his sentencing exposure to 5-years imprisonment, as was proposed in

---

[15]     Defendant offered to provide the Government with the whereabouts of his cohort in crime, Tanya Muteke, who "is not in Africa as the Government suspects."  Instead, defendant says that Muteke is hiding in the United States to avoid prosecution, but is nonetheless "actively preparing to defraud the IRS again," after which he would flee the United States.  Indeed, the defendant states that Muteke, along with twenty-six colleagues, was planning what might be the "largest tax fraud scheme ever" against the IRS.  (Evid. Hr'g Ex. List [213] at Ex. 4.)

17

the plea agreement.  That he did not accept such a deal is his own responsibility.  The Court concludes that defense counsel informed the defendant of any plea offers and defendant has not demonstrated that counsel offered ineffective advise in that regard.  In addition, defendant has demonstrated no prejudice as it is apparent that the defendant was unwilling to accept any plea deal that did not include an immediate bond: something that was never going to happen.

   2.   <u>Defense Counsel's Failure to Locate Kendra Robertson</u>

As his second basis for arguing that his attorney was ineffective, defendant contends that his lawyer should have located Kendra Robertson and subpoenaed her to testify at trial.  Defendant contends that Ms. Robertson was an IRS employee who had told him that it was okay to sell the names and social security numbers of children to clients so that the latter's tax returns could show the existence of dependents who were not in fact these clients' dependents. Defendant has argued that had his lawyer found Ms. Robertson and gotten her to court, this evidence would have provided defendant with a basis for an entrapment defense, at least as to the counts alleging the above conduct.

There are several problems with this argument.  First, defense counsel did attempt to locate Ms. Robertson, but his investigators had no luck.  (Evid. Hr'g Tr. [214] at 50-51.)  In fact, the IRS case agent, herself, had heard mention that Ms. Robertson had worked for

18

the defendant and the agent tried to locate her by looking into an IRS database of active employees: with no success.[16] (*Id.* at 41.) In short, defense counsel's failure to find Ms. Robertson does not mean that counsel performed ineffectively.

Second, had counsel been able to find and subpoena Ms. Robertson, there is no reason to believe that she would have confessed on the stand that it was she who encouraged the defendant to sell potential dependents' social security numbers to unrelated clients to increase the clients' deductions. Indeed, there is every reason to believe that Ms. Robertson would have declined to gratuitously admit to a criminal offense. In all likelihood, she would have asserted the Fifth Amendment.

Finally, this entrapment defense, itself, was laughable. As a legal matter, defense counsel indicated his doubts that the facts proffered by the defendant even met the standards of an entrapment defense. (*Id.* at 53-54.) In the first place, Ms. Robertson had only been a seasonal employee at the IRS, with the most rote and unsophisticated duties. It is not credible that the defendant would

---

[16]   After the trial, the agent continued to look for Ms. Robertson and learned that the IRS had a different database that included past employees. The agent learned that Ms. Robertson had been a seasonal IRS employee in 2007, whose duties would have involved only data input from returns. (Evid. Hr'g Tr. [214] at 43-44.) There is no indication that the agent actually ever found Ms. Robertson.

AO 72A
(Rev.8/82)

have believed that a data entry input operator had the authority to permit him to violate tax laws.  Further, as the magistrate judge noted, an entrapment-by-estoppel defense requires the defendant to show that his reliance on the advice of the Government agent was "objectively reasonable."  Quoting from the Government's argument, the magistrate judge noted that "selling dependants to inflate customers' tax refunds is so obviously fraudulent" that "it is not objectively reasonable to believe that one can commit an obviously criminal act with impunity because someone in government employment says you can."  (R&R [229] at 21.)  The Court agrees.

In short, the Court concludes that defense counsel did not perform ineffectively by failing to find Ms. Robertson.  Further, no prejudice resulted from his failure to locate her, as there is no reason to believe that she would have testified that it was she who orchestrated this criminal endeavor and directed the defendant to commit it, nor is there any reason to believe that a jury would find that excuse persuasive.

C.   **Request For Resentencing As A Result Of The Vacating Of A Michigan Conviction**

In his § 2255 motion, the defendant indicated that he had gotten one of his Michigan convictions vacated, and he requested that the Court resentence him using the lower criminal history score that would result if this Michigan conviction were not counted.

20

1.   Defendant's Criminal Record

The section of the presentence report reflecting the defendant's criminal record indicates that his first conviction after arriving in the United States from Zimbabwe on a student visa in 1999 occurred in Michigan in the year 2000.  The offense was driving with a suspended license and presenting false identification to the police.  He received no criminal history points for this offense.  (PSR at 20, ¶ 54 & 14, ¶ 35.)

His contacts with law enforcement increased in 2002 when he was convicted, again in Michigan, for driving with a suspended license (no criminal history points), and, more significantly, also convicted of embezzlement in December 2002, based on his plea of guilty.  As to the latter conviction, he received 2 criminal history points.  (*Id.* at 14-15, ¶¶ 36-37.)

Five months after the conviction for embezzlement, the defendant was arrested on May 18, 2003, for "uttering and publishing" in Ingham County, Michigan, Docket No. 03-475.  Convicted on his guilty plea for passing two fraudulently-issued checks,[17] the defendant received 2 criminal history points.  (*Id.* at 15, ¶ 38.)

In August 2003, the defendant was charged with another count of

-----

[17]  According to the Order attached to his present § 2255 motion, another count of Uttering and Publishing, Docket No. 03-516-FH, was dismissed as part of the plea agreement.  ([196] at 30.)

21

uttering and publishing, based on the cashing of a fraudulent check written on a bank account for a company that did not exist. (*Id.* at 16, ¶ 39 (Dkt. #03462-FH).)   Pleading nolo contendere in January 2004, he was given a time-served sentence and placed on probation on May 6, 2004.   Defendant received 2 points for this conviction. (*Id.*) According to the PSR, a bench warrant was issued five months later based on the defendant's failure to report to his probation officer and his having left the State of Michigan without the consent of the court.   That warrant was still active at the time of the writing of the PSR. (*Id.*)

Finally, now having fled to Florida, in October 2005, the defendant was charged with an "organized scheme to defraud," to which charge he pled guilty and was sentenced in May 2006 to time served. He received 2 criminal history points.   This offense involved defendant's theft of credit card information from individuals, which information he used to make purchases on his own behalf. (PSR at 17, ¶ 40.)

The above convictions resulted in 8 criminal history points.   As the defendant was on probation in Michigan for the second uttering and publishing conviction (Dkt. #03462-FH), two more points were added to his criminal history score.   Finally, as the defendant committed the present crime less than two years from his release from

22

custody on the Florida conviction, one more point was added, for a total of 11 points, or a Criminal History Category of V. (*Id.* at 17-18, ¶¶ 41-45.)

In addition, once the defendant had been arrested in Georgia on the present charges and the Bureau of Immigration and Customs Enforcement ("ICE") had located him, they placed a hold on the defendant for alien removal. (*Id.* at 19, ¶ 49.)  In addition, the PSR indicates that defendant has another pending "uttering and publishing" charge, Docket No. CRW-04-99.  When defendant failed to appear to answer to this charge, a felony warrant was issued. (*Id.* at 19, ¶ 50.)

> 2.  <u>Defendant's Present Contention Regarding His Criminal History</u>

In his present § 2255 motion, the defendant asked to be resentenced, noting that he had succeeded in having one prior conviction vacated. (§ 2255 Mot. [196] at 28.)  Specifically, defendant attached a copy of an order from the 30th Circuit Court for the County of Ingham, Michigan, dated September 6, 2011.  This order indicated that the defendant had recently challenged his 2003 conviction for Attempted Uttering and Publishing, Docket No. 03-475-FH, contending that he had only pled guilty once his attorney had told him that a plea deal for less than a one-year sentence would not make him deportable and that should defendant go to trial, he could

AO 72A
(Rev.8/82)

potentially receive a 14-year sentence, which would make him
deportable. (*Id.* at 30-31.) According to the order, this advice
must have been wrong because an immigration judge had issued an order
of deportation on June 16, 2004.[18] (*Id.* at 31.)

---

[18] The Court assumes that the Ingham County, Michigan judge,
Judge Rosemarie Aquilina, made the above statement based on
representations that the defendant made to her. That is, the
defendant presumably argued to Judge Aquilina that, as a result of
his conviction in her county, he would be deported, based on an order
issued by an immigration judge on June 16, 2004. Given seemingly
contrary representations made by defendant before this Court,
however, the undersigned finds the above statement to be, at the
least, greatly misleading.

    The parties in this case have been in agreement that the
defendant had overstayed his student visa and was therefore eligible
for deportation. The defendant escaped that fate, however, by
persuading an immigration judge that he would be persecuted or
tortured if he were returned to his native Zimbabwe. (*See* Def.'s *Pro
Se* Mot. to Dismiss Indictment [29] at 3 and 29-1.) Accordingly, on
June 16, 2004, an immigration judge issued an order granting the
defendant's request for Withholding of Removal and Protection under
the Convention Against Torture (CAT): the date that Judge Aquilina
stated to be the date that he was ordered deported. (*Id.* at [29-1].)

    Instead of ordering deportation, however, this order <u>prevented</u>
deportation, at least to Zimbabwe. As the defendant, himself, has
emphasized to this Court: "What this means is that the government
cannot remove the Defendant to his country of origin-Zimbabwe." ([29]
at 3.)

    Moreover, according to the defendant, between June 16, 2004 and
September 14, 2004, the United States Government tried to find a
third country to remove the defendant to, but no other country would
accept him. According to the defendant, this failure on the part of
the Government means that "<u>the Defendant cannot be removed from the
United States</u>." (*Id.* at 3-4 (emphasis added).)

    For the defendant to potentially suffer the prejudice of
deportation as a result of incorrect immigration advice given to him

24

The order indicated that the defendant was challenging this conviction under *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), which held that a defense counsel cannot give his client incorrect information about the risk of deportation arising from a plea of guilty. (*Id.* at 32.) Defendant Govereh had argued that *Padilla* applied in his case, and that his conviction based on his guilty plea should be vacated. Although the State argued that the *Padilla* rule should not be applied retroactively to a case that was made final eight years before, the Michigan Circuit Court concluded that *Padilla* would be applied retroactively and that defendant's conviction should be reversed. (*Id.* at 32-34.)

Based on this ruling, the defendant argued that the 2 points that he was assessed for the #03-475 Michigan conviction (¶ 38 of PSR) should be subtracted from his criminal history score. Further, the defendant argued--incorrectly as it later turned out--that as he was assessed 2 additional points for having committed the present crime while under probation for this offense, those 2 points likewise had to be subtracted. Defendant argued that subtracting 4 points from the 11 points reflected in his PSR would bring him down to a

---

by his Michigan attorney, it is necessary that there actually be some prospect of deportation. But it has been the defendant's position before this Court that, no matter what holds ICE may try to put on him, it can never deport him. If that is so, it is hard to understand how the advice of the Michigan lawyer mattered very much.

Level III.  (Again, this was an incorrect calculation as 7 points is a Category IV).

The Government had contended that the defendant was not entitled to collaterally attack his federal sentence, based on a subsequent reversal of a prior state conviction used to enhance his criminal history. (Gov't's Resp. [203] at 15-18.)  In his R&R, the magistrate judge noted that the Eleventh Circuit had not specifically addressed whether a federal prisoner may seek § 2255 relief where, as in this case, the defendant had received criminal history points for a now-vacated state conviction.  Yet, as other circuits had recognized the propriety of such a claim on a motion to vacate, the magistrate judge assumed that the claim was cognizable here.  (R&R [229] at 23-24.)

Even so, the magistrate judge concluded that defendant's claim failed on the merits as to this ground.  Specifically, the magistrate judge noted that only 2 points would be subtracted from the original 11 point-criminal history score, as a result of the vacation of the Michigan conviction.  The magistrate judge also noted that this particular conviction was not the conviction on which the defendant was serving probation when he committed the present offense, and hence its reversal could not affect the 2 points that were properly assessed for that conduct.  Yet, even if one subtracted 2 more points for the enhancement for being on probation, defendant would still have 7 points.  Because 7 points gives rise to a Level IV and because

26

an Offense Level 25, with a Criminal History of IV, yields a range of 84-105 months imprisonment, defendant's sentence of 100 months was still within that range and no resentencing was necessary. (*Id.* at 24-25.)

The defendant filed Objections to the R&R, both *pro se* and by his appointed counsel. As to the former,[19] the defendant argued that the uttering conviction that was vacated <u>was</u> the conviction that carried with it a probationary period that triggered the 2-level enhancement under U.S.S.G. § 4A1.1(d). (Def.'s Obj. [235] at 15-16.) So, defendant still wants 4 points knocked off as a result of the overturning of his Ingham County uttering conviction.

In addition, the defendant also notes that on March 22, 2012, another Michigan court--the District Court for the 14A-3 District, Judge Richard E. Conlin--vacated his embezzlement conviction. (*Id.* at 20.) According to defendant's count, this adds 2 more points to be subtracted and he should now have 6 points shaved off his original 11-point score, for a total of 5 points, or a Criminal History Category III (70-87 month range).

---

[19] Defendant's appointed counsel reiterated some of defendant's objections in her own Objections. (Def.'s Obj. [234] at 7.)

27

3.   <u>Analysis of Claim Regarding Vacated "Uttering"
Conviction</u>

As set out above, in his § 2255 motion, the defendant sought a
new sentencing hearing because he had succeeded in having a Michigan
court vacate one of his "uttering" convictions.  The defendant argued
that this would mean that his criminal history would have to be
recalculated and, accordingly, the 2 points attributable to this
conviction should be subtracted from the 11 points set out in the
PSR.  The resulting 9 points would place the defendant in a Category
IV for criminal history purposes.

The first question is whether this type of request can be
considered on a § 2255 motion.  As did the magistrate judge, this
Court assumes that it can be.  In *United States v. Walker,* 198 F.3d
811 (11th Cir. 1999), the defendant had been sentenced pursuant to
the Armed Career Criminal Act for knowingly possessing a firearm
after having been convicted of three prior predicate felonies.  After
the sentencing, the defendant went back to state court and got one of
his predicate convictions vacated, based on an argument that his plea
of guilty had not been voluntary and knowing.  (*Id.* at 812.)  The
undoing of that conviction meant that the defendant would no longer
be subject to the 15-year mandatory-minimum sentence of the Armed
Career Criminal Act, 18 U.S.C. § 924(e), and he filed a § 2255 motion
before the district court to be resentenced.  The latter did so,

28

recalculating his criminal history without reference to the now-vacated conviction. (*Id.* at 813.)

On appeal, in a case of first impression for the circuit, the Eleventh Circuit affirmed, relying on *dicta* in *Custis v. United States,* 511 U.S. 485 (1994). In the latter case, the Supreme Court had held that a defendant being sentenced under § 924(e) could not use the federal sentencing hearing as a vehicle to challenge an underlying state predicate conviction. Nevertheless, offering the defendant some free advice, the Supreme Court informed him that he could still attempt to have that underlying conviction set aside through a state or federal habeas petition and, if successful, "he may then apply for reopening of any federal sentence enhanced by the state sentences. We express no opinion on the appropriate disposition of such an application." *Walker*, 198 F.3d at 813 (quoting *Custis*)(emphasis added).

Therefore, joining seven other circuits, the Eleventh Circuit held that a district court may, via a § 2255 motion, reopen and reduce a federal sentence if the federal defendant has, in state court, successfully attacked a prior state conviction previously used to enhance the federal sentence. *Id.* It is true that the panel characterized the district court's action, which it had affirmed, as a reduction of the defendant's Armed Career Criminal Act sentence. The latter imposes a mandatory-minimum sentence. Here, the defendant

29

is seeking to remove only a sentencing enhancement made pursuant to the Sentencing Guidelines.  Yet, as the removal of one of Walker's underlying convictions also presumably impacted the Guidelines' calculation of his criminal history score and as the district court had directed that the new PSR used in resentencing be recomputed without reference to the vacated conviction, one cannot reasonably infer that this distinction would have been important to the *Walker* court.

The more difficult question is whether, on a § 2255 motion, a district court is <u>required</u>, in all circumstances, to recalculate a criminal history score and to reduce a defendant's sentence, as a result of a newly-vacated prior conviction.  Neither party briefed or even mentioned this issue, nor did the magistrate judge find a need to broach it, as he concluded that, even with the requested recalculation, the defendant would still be within a sentencing range that would permit the imposition of the same sentence that this Court had previously imposed.  Yet, as the defendant's suggested recalculation of his criminal history score has become a moving target and as he will presumably be arguing on appeal that his proposed recalculations would give rise to a lower sentencing range, it makes sense to at least ask the question.  It makes particular sense here because the order vacating the Ingham County, Michigan conviction is so problematic.

30

To put it bluntly, the Michigan Circuit Court was flat-out wrong in overturning the defendant's conviction. Leaving aside the factual question whether defendant's representations concerning his potential deportation were false,[20] there can be no doubt that the Michigan Circuit Court committed an obvious legal error in vacating the guilty plea entered by the defendant in the case. Specifically, the circuit court correctly acknowledged that the only way it would be able to vacate the defendant's conviction would be if the Supreme Court's recent *Padilla* decision were applied retroactively. With just a couple of sentences of discussion, the circuit court summarily concluded that *Padilla* should apply retroactively.

Yet, as the Supreme Court has since made clear in an 8-1 decision, *Padilla* cannot be applied retroactively to convictions that were final before its issuance. *See Chaidez v. United States*, 133 S. Ct. 1103 (2013). Nevertheless, even though the defendant had long ago served his state sentence; and even though he was not in any imminent danger of deportation, as he was serving the present federal sentence; and even though reversal of the Michigan conviction could not have conceivably affected defendant's future deportation prospects--as the present federal conviction for fraud would obviously have an even greater impact on that decision--the Michigan

---

[20]    *supra* at 24 n.18.

31

court declined to wait for the Supreme Court to announce the retroactive effect of *Padilla,* and issued its ruling.

So, if there were ever a case where a federal court on a § 2255 motion should refuse to reconsider its sentence based on the overturning of an underlying conviction by a state court, this would be the case. Yet, even if permissible, second-guessing a state court's decision in this context would be a dicey proposition, as it is hard to establish a dividing line for inquiries that effectively serve to relitigate the challenge below and those that can quickly identify very obviously wrong legal conclusions.[21] So, for purposes of the present discussion, the Court will assume that it must consider this Michigan conviction to have been properly vacated.

　　　　4.　 Removal Of 2 Points Added Because Defendant Was On
　　　　　　 Probation When He Committed The Federal Crime

For good measure, the defendant also argued that he received 2 more points, pursuant to U.S.S.G. § 4A1.1(d), for being on probation

---

　　　　[21] Were the Court able to adapt the standard set out in the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1), and to import that modified standard to the present question, this issue would be easier to decide. That statute provides that, in deciding a challenge of a state conviction made in a federal habeas application, the federal court must defer to the state court's decision to deny the claim "unless adjudication of the claim (1) resulted in a decision that was contrary to...clearly established Federal law, as determined by the Supreme Court of the United States." Albeit the Michigan Circuit Court accepted defendant's claim, its decision is contrary to clearly-established Supreme Court law.

at the time that he committed the present federal offense. He asserts that this probationary term was attached to the Michigan "uttering" conviction that was vacated and, from this, he argues that these 2 points should also be subtracted.

As a factual matter, the defendant's claim is disproved by the PSR. The Michigan conviction that was vacated was the one in Ingham County, with Docket No. #03-475. (PSR at 15, ¶ 38.) The Michigan conviction on which plaintiff was serving probation when he committed the present offense was from Ann Arbor, Michigan, Docket No. #03462. (PSR at 16-17, ¶¶ 39, 42.) So, defendant's assertion is flatly contradicted by the PSR.

Defendant argues that the Ann Arbor probationary term could not be a basis for the enhancement as that term would have expired in May 2006, which was prior to the commission of the present federal crime. Besides the fact that this argument would also hold true for the Ingham County conviction, defendant did not contest the enhancement under § 4A1.1(d), and that argument is now waived.

Further, the argument is also without merit. It is true that defendant's two-year probationary term was imposed in May 2004 and, in the normal course of events, should have expired in May 2006. But, as the PSR notes, in October 2004, a bench warrant was issued as a result of the defendant's violation of probation (he absconded), and the PSR indicates that this warrant is still active. (PSR at 16,

33

¶ 39.)   The Sentencing Guidelines, § 4A1.1(d), provides that two points shall be added to a defendant's criminal history score if he "committed the instant offense while under any criminal justice sentence, including probation." Further, pursuant to § 4A1.2(m), a defendant is considered to be under a term of probation while a violation warrant arising from that term is outstanding, even if the probationary term would have expired absent such a warrant. Thus, as long as the violation warrant was pending when the federal criminal offense conduct occurred, the probationary term is a criminal justice sentence for purposes of the criminal history calculation. *United States v. Davis,* 257 Fed. App'x, 195, 197 (11th Cir. 2007), citing *United States v. Davis*, 313 F.3d 1300, 1306 (11th Cir. 2002)(per curiam).

Thus, defendant's argument that the Court should reduce his criminal history calculation by 2 points based on the enhancement for this probationary sentence is without merit.

5.   The Additional Vacated Conviction Raised In Defendant's Objections To The R&R

In his Objections to the R&R, defendant pointed out that another Michigan conviction had been vacated during the pendency of the § 2255 litigation:  an embezzlement conviction from Chelsea, Michigan. Defendant noted that the magistrate judge should therefore have subtracted 2 more points in his criminal history calculation.

34

(Def.'s Obj. [235] at 17.)  The magistrate judge did not address this particular argument in his R&R, however, and for a good reason: the defendant never properly raised this particular issue in the litigation of his § 2255 motion requesting a recalculation of his criminal history.

To recap, defendant filed his Motion To Vacate Sentence [196] on February 6, 2012.  The embezzlement conviction in question (PSR at ¶ 38) was allegedly[22] set aside on March 19, 2012.  Defendant never moved to amend his § 2255 motion to include this vacated conviction as a ground for relief.  Neither did he mention this event in his Reply [204] to the Government's Response to the § 2255 motion, which Reply was filed on April 27, 2012.

It is true that defendant filed a Motion for Bail on May 14, 2012 and in that 11-page motion he mentioned in passing, on page 5, that this embezzlement conviction had been vacated.  ([207] at 5.)  But this was not an appropriate way to alert either the magistrate judge or the Government that the defendant wished to amend his § 2255 motion or its grounds for relief.  Given the numerous pleadings filed by the defendant in this case, he could not have expected the magistrate judge or the Government to have plowed through every

---

[22]  The Court says "allegedly" because it has seen only a letter from a student attorney in the University of Michigan Clinical Law Program stating this fact, not the actual order.  (*See* [207] at 9.)

AO 72A
(Rev.8/82)

missive that he sent, searching through those documents to see if the defendant had perhaps added some additional arguments to his operative motion.

Moreover, the particular pleading that mentioned the vacating of the embezzlement conviction was styled as a Motion for Bail Pending This Court's Decision [207].   A motion for bail was one of the defendant's favorite type of motions to submit in this litigation, as immediate release from jail has been a consistent preoccupation for him.   Thus, he filed motions for bail, or their equivalent, throughout this litigation. (*See, e.g.,* Mot. For Release On Bond Pending Ct.'s Decision On The Def.'s Mots. And If Necessary Pending Appeal [145], filed on Aug. 5, 2009; Mot. For Bond Pending Appeal [167], filed on Feb. 9, 2010; Mot. For Bail Pending This Ct.'s Decision On Def.'s Mot. To Vacate Under Section 2255 [207], filed on May 14, 2012; Mot. For Issuance Of The Report And Recommendation [228], filed on Oct. 3, 2012; and Mot. For An Order Partially Granting Relief [237], filed on Dec. 30, 2012.)

Defendant could not have reasonably expected the magistrate judge to parse such a bail motion in an effort to identify further arguments in support of defendant's § 2255 motion.   Accordingly, the Court considers any issue concerning the overturning of this embezzlement conviction to have been waived.

Even if it were not waived, the information provided by

36

defendant in connection with this conviction is way too scant to permit the Court to subtract the 2 criminal history points attributable to it. That is, defendant has submitted a letter from his University of Michigan Clinical Law Student Attorney indicating that Judge Conlin vacated the embezzlement conviction on March 19, 2012 ([207] at 9), and a later letter from the same clinical program attaching a subsequent order of dismissal of the charges, dated August 27, 2012 ([235] at 19-20).

What is missing is the actual order vacating the conviction. That order is essential to understanding the basis for the judge's action. This Court has assumed that it might be required to accept as valid an order vacating a conviction on constitutional grounds, such as the Ingham County Circuit's order vacating the uttering conviction, no matter how obviously wrong, as a legal matter, such an order may have been. The Court does not assume that it must accept as valid _any_ state court order that invalidates a conviction, no matter the ground, as all invalidations of state convictions are not equal under the Guidelines. Thus, a sentence from a conviction that is reversed or vacated because of errors of law, because of subsequently discovered evidence exonerating the defendant, or because the conviction has been ruled to be constitutionally invalid shall not be counted under the Guidelines. U.S.S.G. § 4A1.2, Appl. Note 6. Yet, with the exception of expunged convictions, a

AO 72A
(Rev.8/82)

conviction that has been set aside for reasons unrelated to innocence or to errors of law shall be counted. *Id.* at Appl. Note 10.

For this reason, some courts have refused to disregard a state court conviction that has been vacated for the sole purpose of manipulating the calculation of the federal Sentencing Guidelines. *See, United States v. Martinez-Cortez*, 354 F.3d 830, 832 (8th Cir. 2004)(where a state conviction had been vacated for the express purpose of enabling the defendant to become eligible for the safety valve, the sentence would have to be counted under the Guidelines because it had been set aside for reasons unrelated to innocence or errors of law); *United States v. Pech-Aboytes*, 562 F.3d 1234 (10th Cir. 2009)(the same); *United States v. Yepez*, 704 F.3d 1087 (9th Cir. 2012)(the same).

Thus, the reason why the Michigan court vacated this embezzlement conviction is important. If it was not done to correct a legal or constitutional error, then it should be counted. Without reading the Order, though, the Court cannot know why it was issued. It was up to the defendant to supply that Order and its reasoning, and his omission is note-worthy, as the defendant is nothing if not methodical and detail-oriented. At any rate, defendant failed to provide the Order, and the Court concludes that defendant has both waived the issue and failed to demonstrate why the underlying conviction should be disregarded.

38

6.   This Court's Decision

The Court concludes that, at best, the defendant has shown that 2 points should be subtracted from his criminal history score, based on the Ingham County court's Order vacating the uttering conviction. Even subtracting those 2 points, the defendant still has 9 criminal history points, which puts him in a Category IV, and makes him still subject to a 100-month sentence. (An Offense Level 25 with a Criminal History IV produces a range of 84-105 months).  The Court would impose that same 100-month sentence, notwithstanding the action of the Michigan court.

Even if the Court has erred and should have subtracted 2 more points based on the now-vacated Michigan conviction for embezzlement that defendant failed to properly identify as being part of his § 2255 challenge, the defendant would have 7 points, and would thus still be within Category IV.   Thus, the 100-month sentence would still be within the Guidelines.

Finally, ignoring the absence of any sound basis for the request, but assuming that the Court should have subtracted the final 2 points requested by defendant based on the enhancement made because he was on probation, this last subtraction would then put the defendant in a Category III, which would give rise to a 70-87 month range.   Nevertheless, the Court would still impose a 100-month sentence.   That is, whether or not the criminal history score has

39

changed, such that the defendant's new Guidelines range is below the 100-month sentence that was originally imposed, this Court still has the power under *Booker* to impose the sentence that it believes to be reasonable under the factors set out in 28 U.S.C. § 3553.  Albeit defendant has been able to have two convictions vacated, there has been no indication that the defendant is not guilty of the conduct that underlay those convictions, and indeed the accuracy of the offense conduct set out for these convictions in the PSR was not contested by the defendant at the sentencing hearing.

Moreover, as the Court has previously observed, the defendant is a dedicated and diligent fraudster.  Whether the amounts of money he steals are large or small--and with his recent federal convictions, the dollar amounts have become quite large--his prior conduct suggests that he will continue taking money from innocent people to use for his own benefit.  That is, he continued his criminal activity, even after being granted asylum status, seemingly emboldened by the fact that, no matter what he does, he does not believe he can be deported.  That fact, plus his agility at fleeing and remaining under the radar for a long period of time, combined with his new-found success at getting prior convictions reversed, means that he will likely perceive few downsides to the continuation of his criminal conduct when he is released. For all these reasons, the Court concludes that a 100-month sentence was, and is, a

40

reasonable sentence that satisfies the goals set out in § 3553.

**III. <u>CONCLUSION</u>**

For the reasons set forth above, the Court **ADOPTS** the Magistrate Judge's Final Report and Recommendation [229], **OVERRULES** Govereh's Objections [234-35], and **DENIES** Govereh's 28 U.S.C. § 2255 Motion To Vacate Sentence [196] and Motion for an Order Partially Granting Relief [237].

As to the issuance of a Certificate of Appealability ("COA"), it is not clear to the undersigned that a reasonable jurist could credibly debate the above conclusions. Nevertheless, erring on the side of caution, the Court **GRANTS** the defendant a COA on the question whether the Court is correct in concluding that a 100-month sentence is a reasonable sentence, notwithstanding the challenges to his criminal history calculation that the defendant now makes.

**IT IS SO ORDERED** this <u>9th</u> day of <u>AUGUST</u>, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

41